1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7

8

9

10

11

ALTAFLO, LLC, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

DUN & BRADSTREET CREDIBILITY
CORPORATION, et al.,

Defendants.

C14-1288 TSZ

ORDER

12

13

14

15

THIS MATTER comes before the Court on a motion to dismiss brought by

defendant Dun & Bradstreet Credibility Corporation ("DBCC"), docket no. 66.  Having

reviewed all papers filed in support of, and in opposition to, DBCC's motion, the Court

enters the following order.

16

**Background**

17

18

19

20

21

22

23

Plaintiff Altaflo, LLC brings this action on behalf of itself and a class of all

entities in New Jersey that purchased DBCC's product known as CreditBuilder, which is

an Internet-based system for credit self-monitoring.  DBCC acquired CreditBuilder from

defendants Dun & Bradstreet Corporation and Dun & Bradstreet, Inc. (collectively,

"D&B"), along with licenses to use the "Dun & Bradstreet" name, brand, logo, and trade

dress.  D&B collects financial information and issues credit reports, scores, and ratings

ORDER - 1

on businesses, which are used by the government, as well as private companies, to make

contracting and other commercial decisions.  In connection with credit information, D&B

uses the Data Universal Number System ("DUNS"), pursuant to which businesses are

assigned unique identifiers.

According to plaintiff, when businesses contact D&B concerning any problem

with their credit reports, they are "uniformly and seamlessly routed to a DBCC sales

representative who tries to sell them CreditBuilder, rather than attempt to fix the

problem."  Am. Compl. at ¶ 21 (docket no. 64).  Plaintiff does not allege, however, that it

was solicited in this manner.  Instead, plaintiff merely states that it received from DBCC

marketing materials that bore the "Dun & Bradstreet" logo and "positioned CreditBuilder

as a unique D&B-related product."  _Id._ at ¶ 56.  Plaintiff does not indicate when or how

these materials arrived.  Plaintiff also does not plead that it ever directly communicated

with DBCC prior to purchasing CreditBuilder on two occasions, first in May 2011 and

then in May 2012, each time for $499.00.  _See id._ at ¶ 41.  Plaintiff contends that it

"believed it had no choice" but to purchase CreditBuilder because D&B had "seeded" its

credit report with false information.[1]  _Id._ at ¶¶ 57-58.

Plaintiff alleges that DBCC holds itself out as D&B and holds CreditBuilder out as

a D&B-affiliated product, and that DBCC touted CreditBuilder as "the solution to false

entries" on plaintiff's credit report, but plaintiff fails to explain when or how DBCC did

---

[1] Plaintiff concedes, however, that DBCC was not advised by D&B of any actions taken by D&B to inflate the number of credit inquiries about a business, which would negatively impact its credit rating. _See_ Am. Compl. at ¶¶ 6, 38, 50, & 52 (docket no. 64).

ORDER - 2

1   so. *See* *id.* at ¶¶ 55 & 61.  According to plaintiff, DBCC's sales representatives refer to

2   D&B's databases as "*our*" databases, describe credit reporting functions performed by

3   D&B as something "we" do, and indicate that "companies are coming to *us*" (as opposed

4   to D&B) for credit reports.  *Id.* at ¶ 27 (emphasis in original).  Plaintiff fails, however, to

5   describe any circumstance under which it might have heard DBCC's sales representatives

6   make these statements.

7        Plaintiff asserts that, in February 2014, D&B published to "FEI" (plaintiff has not

8   defined this acronym) a report incorrectly setting forth credit lines of only $50,000, when

9   plaintiff's credit lines were actually over $500,000.  *Id.* at ¶ 63.  Plaintiff alleges that, as a

10  result, it lost the opportunity to become a "prime vendor" with FEI.  *Id.*  In addition, in

11  February 2014, D&B's database reflected that plaintiff had outstanding loans through

12  TriCo Federal Credit Union ("TriCo").  *Id.* at ¶ 64.  According to plaintiff, although

13  TriCo processed the appropriate documentation after plaintiff paid off its loans, D&B

14  failed to update plaintiff's credit report.  *Id.*  Plaintiff does not explain how either of these

15  errors was caused by DBCC or resulted from plaintiff's purchase of CreditBuilder almost

16  two years earlier.  Plaintiff has brought two claims against DBCC, namely violation of

17  New Jersey's Consumer Fraud Act ("CFA") and negligent misrepresentation.  DBCC has

18  moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss both claims.

19  **Discussion**

20  **A.**    **Standard for Motion to Dismiss**

21       Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not

22  provide detailed factual allegations, it must offer "more than labels and conclusions" and

23

ORDER - 3

1  contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl.*

2  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must indicate more than

3  mere speculation of a right to relief.  *Id.*  When a complaint fails to adequately state a

4  claim, such deficiency should be "exposed at the point of minimum expenditure of time

5  and money by the parties and the court."  *Id.* at 558.  A complaint may be lacking for one

6  of two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a

7  cognizable legal claim.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th

8  Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the

9  plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  *E.g.*,

10  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the

11  Court is whether the facts in the complaint sufficiently state a "plausible" ground for

12  relief.  *Twombly*, 550 U.S. at 570.  If the Court dismisses the complaint or portions

13  thereof, it must consider whether to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122,

14  1130 (9th Cir. 2000).

15  **B.      Consumer Fraud Act**

16        By statute, New Jersey has declared to be an "unlawful practice" the use of "any

17  unconscionable commercial practice, deception, fraud, false pretense, false promise, [or]

18  misrepresentation" in connection with the sale or advertisement of "any merchandise."

19  N.J. Stat. § 56:8-2.  Merchandise includes "any objects, wares, goods, commodities, or

20  services."  N.J. Stat. § 56:8-1.  A civil action may be brought by "[a]ny person who

21  suffers any ascertainable loss of moneys or property . . . as a result of" another person's

22  use of an unlawful practice.  N.J. Stat. § 56:8-19.  An ascertainable loss is one that is

23

ORDER - 4

1  "quantifiable or measurable," and "not hypothetical or illusory," but it need not have

2  been experienced yet so long as an estimate of the loss can be "calculated within a

3  reasonable degree of certainty."  *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d

4  783, 792-93 (N.J. 2005).  A party who prevails on a CFA claim is entitled to legal and/or

5  equitable relief and "threefold the damages sustained" by such person, as well as

6  reasonable attorney's fees and costs.  N.J. Stat. § 56:8-19; *Hawkins v. Globe Life Ins. Co.*,

7  --- F. Supp. 3d ---, 2015 WL 2250467 at *13 (D.N.J. May 13, 2015).

8          A prima facie case under the CFA consists of (i) unlawful conduct by the

9  defendant; (ii) an ascertainable loss by the plaintiff; and (iii) a causal connection between

10  the defendant's unlawful conduct and the plaintiff's ascertainable loss.  *Lieberson v.*

11  *Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011).  An act

12  may be considered an unlawful practice "whether or not any person has in fact been

13  misled, deceived or damaged thereby."  N.J. Stat. § 56:8-2; *see Byrne v. Weichert*

14  *Realtors*, 675 A.2d 235, 240-41 (N.J. Super. Ct. App. Div. 1996) ("A practice can violate

15  the Act even though no one was misled or deceived as a result. . . .  It is the 'capacity to

16  mislead' that is critical.").  To assess whether a representation is false or misleading, the

17  Court must consider the effect that the statement, "taken as a whole, would produce on

18  one with an ordinary and unsuspecting mind."  *Hawkins*, 2015 WL 2250467 at *13.  New

19  Jersey courts recognize the distinction between false or misleading representations of fact

20  that are actionable and mere puffery about a product that will not support a CFA claim.

21  *See Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991) (holding that insurer's slogan,

22  "You're in good hands with Allstate," is "nothing more than puffery" and did not violate

23

ORDER - 5

1  the CFA); *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super.

2  Ct. App. Div. 2003) (concluding that advertisements indicating the use of an allergy

3  medication would allow a consumer to "lead a normal nearly symptom-free life again"

4  did not state facts, but merely expressed puffery and were not actionable); *see also*

5  *Wendling v. Pfizer, Inc.*, 2008 WL 833549 at *4 (N.J. Super. Ct. App. Div. Mar. 31,

6  2008) (affirming the dismissal of a CFA claim premised on the statement that a certain

7  veterinary product would "prevent and control parasites every day").

8       Having reviewed the Amended Complaint, the Court is persuaded that plaintiff has

9  not sufficiently pleaded a claim under the CFA.[2]  Plaintiff fails to explain how DBCC's

10 licensed use of the "Dun & Bradstreet" logo constitutes a false or misleading statement of

11 fact, and it offers no basis for treating DBCC's touting of CreditBuilder "as a unique

12 D&B-related product" and "the solution to false entries" on plaintiff's credit report as

13 anything other than non-actionable puffery.  Plaintiff also neglects to provide the details

14 necessary to draw a causal connection between DBCC's marketing materials and

15 plaintiff's purchase of CreditBuilder or between DBCC's marketing materials and any

16 ────────────

17 [2] Although district courts in New Jersey have applied the heightened pleading standard set forth in
Federal Rule of Civil Procedure 9(b) to claims brought under the CFA, *see Lieberson*, 865 F. Supp. 2d at
18 539; *see also Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 279 (D.N.J. 2011), the
Court declines to do so in this case.  Both *Lieberson* and *Green* relied on *Frederico v. Home Depot*, 507
19 F.3d 188 (3d Cir. 2007), which involved a common law fraud claim and a related CFA claim.  The
"unlawful practice" at issue in *Frederico* was a process "intended to delay the return of rental vehicles" to
enable the defendant to "profit from charging . . . excessive 'late' rental return fees."  507 F.3d at 202.
20 Thus, the CFA claim in *Frederico* was premised on the fraud prongs of the statute, as opposed to the
misrepresentation provisions, rendering Rule 9(b) germane.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud
21 or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  In the
matter pending before the Court, plaintiff invokes the portions of the CFA aimed at misrepresentations,
22 and the Court concludes that the applicable pleading standards are those articulated in Federal Rule of
Civil Procedure 8(a).

23

ORDER - 6

1    ascertainable loss plaintiff might have suffered.  Instead, the operative pleading indicates

2    merely that plaintiff bought CreditBuilder in May 2011 and May 2012, and that D&B's

3    database contained two errors about plaintiff's financial status in February 2014.  These

4    allegations do not a CFA claim make.

5    **C.     Negligent Misrepresentation**

6         Under New Jersey law, to prevail on a claim for negligent misrepresentation, a

7    plaintiff must show that the defendant negligently made an incorrect statement of fact on

8    which the plaintiff justifiably relied.  _Alexander v. CIGNA Corp._, 991 F. Supp. 427, 440

9    (D.N.J. 1998); _see also_ _Singer v. Beach Trading Co._, 876 A.2d 885, 890-91 (N.J. Super.

10    Ct. App. Div. 2005).  Plaintiff's common law claim suffers from the same flaws as its

11    statutory claim.  The Amended Complaint fails to articulate any erroneous statement of

12    fact uttered by DBCC, make any allegation tending to show that DBCC acted in a

13    negligent manner, or describe a sequence of events demonstrating that plaintiff justifiably

14    relied on any of DBCC's representations.

15    **Conclusion**

16         For the foregoing reasons, the Court ORDERS:

17         (1)     DBCC's motion to dismiss, docket no. 66, is GRANTED;

18         (2)     Counts I and II of the Amended Complaint, docket no. 64, are

19    DISMISSED, without prejudice, and with leave to file a motion to amend; any such

20    motion shall include a redlined version of a proposed second amended complaint and

21    shall be filed within thirty-five (35) days of the date of this Order; and

22

23

ORDER - 7

1    (3)    The Clerk is DIRECTED to send a copy of this Order to all counsel of

2  record.

3    IT IS SO ORDERED.

4    Dated this 19th day of October, 2015.

5

6

7    Thomas S. Zilly
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 8